U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 MAR 31 PM 2:53

CLERK

BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WILMA PATRICIA PARRA,
Plaintiff,

v.

WORLD LEARNING, INC.,
Defendant.

Case No. 2:23-cv-00070

**OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS***
(Doc. 9)

Plaintiff Wilma Patricia Parra ("Parra") brings this action against Defendant World Learning, Inc. ("World Learning"), a Vermont-based, non-profit organization that runs international educational programs. Pending before the court is a motion to dismiss for *forum non conveniens* filed by World Learning on June 16, 2023. (Doc. 9.) Discovery has been stayed since January 5, 2024, pending disposition of World Learning's motion to dismiss. (Doc. 29.)

Plaintiff asserts seven causes of action: Count 1: Failure to Pay Indemnity Under Bolivian Employment Law; Count 2: Failure to Pay Severance ("Desahucio") Required Under Bolivian Law; Count 3: Failure to Pay Year-End Bonus ("Aguinaldo") Required Under Bolivian Law; Count 4: Failure to Pay Paid Vacation Benefit Under Bolivian Law; Count 5: Failure to Pay Seniority Bonus ("Bono de Antigüedad") Under Bolivian Law; Count 6: Failure to Contribute to Employee Pension Fund Under Bolivian Law; and Count 7: Breach of Contract. (Doc. 3.)

Plaintiff is represented by Evan K. Barquist, Esq. and Kristen J.E. Connors, Esq. Defendant is represented by Stephen D. Ellis, Esq.

## I. Background

### A. Facts as Alleged in the Complaint

World Learning is a Vermont-based, non-profit organization that runs educational programs across the globe. (Doc. 3 ¶ 2.) World Learning, under the assumed business name the School for International Training ("SIT"), provides study abroad programs and internationally focused advanced degree programs known as SIT Study Abroad and SIT Graduate Institute, respectively. (*Id.* ¶¶ 3-4.) From December 1991 until July 2020, SIT operated in Cochabamba, Bolivia (hereinafter "SIT-Bolivia"). (*Id.* ¶ 5.)

Parra is a Bolivian citizen residing in Cochabamba, Bolivia. (*Id.* ¶ 17.) Parra was employed by SIT-Bolivia as a program assistant from December 1996 until 2020, when World Learning decided to permanently close the SIT-Bolivia program. (*Id.* ¶¶ 32–42.) On July 1, 2020, SIT-Bolivia terminated Parra's employment without notice. (*Id.* ¶ 8.)

The Bolivian Constitution sets forth "Bolivian citizens' right to work and employment." (*Id.* ¶ 27.) Article 48 of the Bolivian Constitution provides:

> labor norms shall be interpreted and applied based on the following principles: the protection of workers as the primary productive force of society; the primacy of the labor relation; work continuity and stability; non-discrimination and the making of investments in favor of the worker.

(*Id.* ¶ 28.)

> Article 49 of the Bolivian Constitution gives the state the power to legislate and regulate the following: employment contracts; minimum wages and salary increases; reincorporation; paid vacations and holidays; the calculation of seniority bonuses, the work day extra hours, nighttime overtime, and Sunday work; Christmas bonuses; vouchers, bonuses and profit sharing; indemnification and severance pay; maternity leave; professional training; and other "social rights."

(*Id.* ¶ 29.)

"The General Labor Law . . . of December 8, 1942[ ] governs labor and employment matters in Bolivia." (*Id.* ¶ 30.) Parra's employment contract with World Learning specifically provides that it will be governed by the General Labor Law. (*Id.* ¶ 36.) Under this law, an employer must pay an employee who has worked for that employer for five years or more an indemnity when an employee leaves the job. (*Id.* ¶ 44). Parra seeks damages for an unpaid indemnity. (*Id.* ¶¶ 92–93.) The General Labor Law also requires payment of a severance if an employee is terminated without receiving proper notice. (*Id.* ¶ 51.) Parra's employment contract requires Defendant to provide Parra with written notice of her termination. (*Id.* ¶ 52.) Parra seeks damages for unpaid severance pay as she alleges she was not provided proper notification of her termination. (*Id.* ¶¶ 100–01.) The General Labor Law further requires an employer to provide employees who have worked for ten years or more to receive thirty paid vacation days. (*Id.* ¶ 63.) The employer must compensate the employee for any unused vacation days when the employee is terminated. (*Id.* ¶ 65.) Parra seeks damages for unpaid vacation days. (*Id.* ¶¶ 108–09.) Bolivian law entitles employees to seniority bonuses after being employed for two years. (*Id.* ¶ 68.) Parra seeks damages for unpaid seniority bonuses. (*Id.* ¶¶ 112–13.) "Bolivian law requires employers to register with the Bolivian Department of Labor, and make regular payments into the Pension Fund, employment taxes, and other similar government programs." (*Id.* ¶ 10.) Parra seeks damages for Defendant's failure to make contributions to the pension program as required. (*Id.* ¶¶ 121–22.)

**B. Procedural History**

Plaintiff filed this case with the District of Vermont on April 17, 2023. (Doc. 3 at 1.) On June 16, 2023, Defendant filed the pending motion to dismiss for *forum non conveniens*. (Doc. 9.) Plaintiff opposes this motion. (Doc. 17.) A hearing on this motion was held on January 5, 2024. (Doc. 28.) Following the hearing, the court issued a stay for 90 days to give Parra time to

begin a legal proceeding in Bolivia. (Doc. 29 at 2.) The court wanted to have additional information as to "whether an adequate alternative forum [was] available to hear the parties' dispute in Bolivia." (*Id.*) On May 2, 2024, Parra reported to the court that she had begun a legal proceeding in Bolivia on April 3, 2024, but was waiting to hear if the case had been "admitted" by the Bolivian court. (Doc. 31 at 1.) On May 7, 2024, Parra provided more information and clarified that her legal proceeding was filed specifically with the Labor and Social Security Court in Cochabamba, Bolivia. (Doc. 34-1 at 2.) The court issued a second 90-day stay on May 31, 2024. (Doc. 36.) Parra's claims were "admitted" by the Labor and Social Security Court in Cochabamba, Bolivia on May 6, 2024. (Doc. 39-1 at 23.)

Initially, Plaintiff attempted to serve World Learning in Vermont based on what Plaintiff asserts was a Bolivian court order expressly ordering them to do so. (Doc. 39 at 1–2.) Defendant responded that service in Vermont was not possible, as "[t]he Bolivian courts have no jurisdiction here, the United States and Bolivia are not parties to any bilateral treaties authorizing service of legal process, and the undersigned has no legal authority in Bolivia." (Doc. 38 at 3.)

On or before September 27, 2024, Parra attempted to serve Defendant's Bolivian legal representative at an address she obtained on the internet, but reported finding an empty office at that address. (Doc. 39 at 2.) On September 30, 2024, World Learning provided Parra the contact and office information of its Bolivian legal representative who, if served properly under Bolivian law, would accept service on behalf of World Learning. (Doc. 42-2 at 2–3.)

On December 12, 2024, a second hearing was held regarding the motion to dismiss for *forum non conveniens*. (Doc. 44.) At this hearing, both parties represented that Parra was in the process of properly serving World Learning's legal representative in La Paz, Bolivia. On February 14, 2025, Defendant submitted to the court a document, written in Spanish, which according to

Defendant establishes that its legal representative in Bolivia received judicial notice that a legal proceeding had been commenced against World Learning in La Paz, Bolivia. (Doc. 45 at 1.) Defendant filed additional documents, written in Spanish, on March 7, 2025. Defendant asserts these documents establish World Learning was served with Plaintiff's Bolivian complaint and that World Learning responded to the complaint. (Doc. 46.) Plaintiff has not responded to either of these filings or the assertions made therein.

## II. Legal Standard

The doctrine of *forum non conveniens* is a device that grants the court the discretion "in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted).

> [W]hen an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Id.* (alterations in original) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)). "The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991) (emphasis added) (citation omitted). The *forum non conveniens* determination "lies wholly within the broad discretion of the district court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (citation omitted).

A *forum non conveniens* analysis follows a three-prong balancing test that starts with a determination of the "degree of deference properly accorded the plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citation omitted).

Next, the court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* (citation omitted). Lastly, "a court balances the private and public interests implicated in the choice of forum." *Id.* (citation omitted).

**III. Discussion**

The court begins its assessment by determining the amount of deference to be accorded to Plaintiff's choice of forum. "Generally, there is a strong presumption in favor of the plaintiff's choice of forum." *Do Rosario Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 302 (S.D.N.Y. 2007) (citation omitted).

> [A] plaintiff's choice of her home forum should be given great deference, while . . . a foreign resident's choice of a U.S. forum should receive less consideration, as representing consistent applications of a broader principle under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations.

*Igaorri*, 274 F.3d at 71. The Supreme Court explained:

> [w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981).

Factors to be considered on one side of the scale described in *Igaorri* include, "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 319 (S.D.N.Y. 2024) (citation omitted). The other side of the scale requires the court to consider circumstances which suggest forum shopping. *Id.* (citation omitted). A court is not required to consider every factor in determining

the balance. *Id.* (citation omitted). If the factors indicate the plaintiff's choice of forum relates to considerations of convenience, the defendant will face a greater challenge in having the case dismissed on the basis of *forum non conveniens*. *Star Colbert*, 724 F. Supp. 3d at 319–20 (citation omitted). On the other hand,

> where the circumstances indicate that the parties and material events bear no bona fide connection to the United States, or that in relation to the core operative facts in dispute the parties and events at best have only marginal links to the plaintiff's chosen venue, that choice of forum is not entitled to special deference[.]

*Id.* at 320 (quoting *Do Rosario Veiga*, 486 F. Supp. 2d at 302).

The circumstances in this case warrant providing little deference to Plaintiff's choice of forum in the District of Vermont. The convenience of Plaintiff's residence in relation to the chosen forum is nonexistent. Parra is a foreign plaintiff who has no connection to the State of Vermont other than working for a company whose headquarters are in Vermont. Parra worked for SIT-Bolivia for over 23 years in Cochabamba, Bolivia. She has never worked for World Learning or SIT-Bolivia anywhere else.

Plaintiff and Defendant disagree as to the forum in which witnesses and evidence are most available. All of the activity related to Plaintiff's claims, however, occurred in Bolivia. Defendant, through its authorized representative, has declared it is amenable to suit in Bolivia. (Doc. 9-2.) At the very least, it appears that Parra's complaint in Bolivia has been "admitted" by the Bolivian court. Parra has an attorney in Bolivia providing her with legal assistance. Additionally, it appears most of the documentary evidence in this case is written in Spanish, which requires translation for a court in the District of Vermont. The court and the jury would then need to apply Bolivian law. Plaintiff acknowledges that damages "are all calculated using mathematical formula[e] set out in Bolivian Labor codes." (Doc. 17 at 4.) After consideration of these factors, the court concludes minimal deference should be given to Plaintiff's choice of forum.

This minimal deference does not, however, end the discussion. The court next considers the adequacy of the Bolivian court system as an alternative forum. When determining if another court is an adequate alternative forum, courts consider (1) whether the alternative court is willing and able to provide a remedy to the plaintiff; and (2) whether the "defendant[] [is] amenable to service of process there[.]" *Aenergy, S.A. v. Republic of Angl.*, 31 F.4th 119, 130 (2d Cir. 2022).

Bolivian courts adjudicate labor and employment disputes. There is no evidence that Bolivian courts are unwilling or unable to handle this matter. In fact, the claim has been "admitted" by the Labor and Social Security Court in Bolivia. (Doc. 34-1 at 2.) This court has confidence in the Bolivian court system to handle this dispute, particularly because most of Parra's claims allege a failure to comply with Bolivian employment law.

Plaintiff argues that Bolivia is not an adequate alternative forum because Defendant has minimal assets located in Bolivia. (Doc. 17 at 5.) In support of this position, Parra relies on *Nemariam v. Fed. Democratic Republic of Eth.*, 315 F.3d 390, 395 (D.C. Cir. 2003). In *Nemariam*, the district court dismissed the action on the basis of *forum non conveniens*. *Nemariam*, 315 F.3d at 391. The D.C. Circuit Court of Appeals reversed, concluding the alternative forum did not offer plaintiff an adequate remedy. *Id.* In that case, plaintiff was not able to file a claim with the international commission, leaving plaintiff with no personal right to a remedy. *Id.* at 393. Instead, only the two countries involved in the commission were able to bring claims on behalf of individuals. *Id.* at 392. The Circuit Court found that because the Commission was unable to make an award directly to the plaintiff and there existed a possibility that the two countries could negotiate and "set-off" awards, the Commission was rendered an inadequate forum. *Id.* at 393-394.

Unlike the plaintiff in *Nemariam*, Parra is able to file a claim in the Bolivian Labor and Social Security Court and the Bolivian court can make an award to her directly. Plaintiff appears to argue that being unable to enforce a judgment is the same as the inability of a court to make an award directly to a plaintiff. The holding in *Nemariam* does not bridge that gap.

Additionally, Defendant is amenable to service in Bolivia. Defendant has asserted it is amenable to the legal process and the jurisdiction in Bolivia. (Doc. 9-2; Doc. 23-2, ¶ 8.) There is a process in Bolivia for serving Defendant, and the parties are currently in the middle of achieving service of process. Consequently, the court finds Bolivia to be an adequate alternative forum.

Lastly, the court weighs both private and public factors to determine if dismissal is proper. In weighing these factors, courts consider several private interests, such as:

> the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of a view of relevant premises, if such a view would be appropriate to the action; and, all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Carey*, 370 F.3d at 237 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F.3d at 74. "Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties . . . ." *Id.*

Plaintiff's claims involve performance of an employment contract entered into in Bolivia. Plaintiff's claims relate to specific requirements of Bolivian law, which are incorporated into the employment contract. The employment contract states that it will be governed by the Bolivian

General Labor Law. Plaintiff entered into her employment agreement with SIT-Bolivia while residing in Bolivia. Such transaction in Bolivia would reasonably indicate it is the parties' expectation that litigation over the performance of this agreement occur in Bolivia.

In *Carey*, the Second Circuit affirmed the dismissal of a suit brought by a United States citizen in the Southern District of New York against a German bank. *Carey*, 370 F.3d at 239. The Second Circuit emphasized the presumptive validity of a United States resident's choice to bring suit in a United States forum. *Id.* at 238. (citation omitted). The court, however, emphasized that when a United States citizen, living in Germany, decides to enter into a contract to purchase and finance an apartment unit in Germany, it becomes reasonable to expect disputes over the contract and its performance be resolved in German courts. *Id.*

Even though Plaintiff is not a citizen of the United States, this court finds that the facts in *Carey* align closely with the facts in this case. Given that Plaintiff entered into an employment agreement in Bolivia, and is a resident and citizen of Bolivia, it is reasonable for the parties to expect to litigate the performance of the agreement in Bolivia.

Plaintiff acknowledges her "claims are that Defendant did not make certain payments mandated by Bolivian law; either Defendant made the payments, or it did not. The relevant evidence is Defendant's financial records, which will either show that Defendant made the payments, or it did not." (Doc. 17 at 7.) Plaintiff argues, "[a]ll of Defendant's financial documents, which presumably Defendant would rely upon to show that it did in fact make the payments required under Bolivian law," can be accessed electronically. (*Id.* at 3.)

Defendant asserts there are witnesses and evidence in Bolivia relevant to this case. Given that the employment contract was executed and all work associated with the contract was done in Bolivia, the court finds it probable that witnesses and evidence are located in Bolivia. Moreover,

if as Plaintiff alleges, Defendant relies on its financial records to establish it made payments, then Defendant will produce these records in a Bolivian court. Moreover, translating all of the written evidence could prove difficult and unnecessarily prolong the adjudication of this matter. Finally, the hardship for Plaintiff to bring suit in Bolivia is low. Plaintiff has already done so.

When comparing the hardship Defendant may face against the hardships Plaintiff may face, the court finds the private factors weigh in favor of Bolivian courts handling this dispute. The inefficiency and inconvenience Defendant and the court would face should the case remain in the District of Vermont "is all the more striking given the existence of an alternative forum where many of these problems would not arise." *Star Colbert*, 724 F. Supp. 3d at 332 (citation omitted).

Plaintiff has stipulated public interests weigh in favor of Bolivian courts adjudicating this matter. (Doc. 17 at 6.) In considering the public interests, the courts consider, "court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved." *Carey*, 370 F.3d at 237 (citation omitted).

The public interest in having this case adjudicated in the Bolivian court system is great. Bolivian courts are in a better position to handle disputes over Bolivian labor law than the District of Vermont. These are matters that are incorporated into Bolivia's Constitution. If this case is tried in the District of Vermont, this court would be tasked with learning Bolivian labor law which would make trial of this case difficult, slow, and expensive.

It is true that "[t]he need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens*[;]" however, every prong of the three-prong balancing test weighs in favor of Bolivia adjudicating this matter. *Alnwick v. Eur. Micro Holdings, Inc.*, 29 F. App'x 781,

784 (2d Cir. 2002) (first alteration in original) (citation omitted). Accordingly, this court dismisses the action on the grounds of *forum non conveniens*.

## IV. Order

The court GRANTS Defendant's motion to dismiss for *forum non conveniens*. (Doc. 9).

SO ORDERED at Rutland, Vermont, this 31st day of March 2025.

Mary Kay Lanthier
United States District Court Judge